## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **DISRUPTIVE RESOURCES, LLC,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**BALLISTIC BARRIER PRODUCTS INC. AND MAYDAY SECURITY SOLUTIONS LLC,**<br><br>      **Defendants.** | **Court No. 1:24-cv-00321-JCG** |

## OPINION AND ORDER

[Denying Defendants' Motion to Dismiss and Renewed Motion to Transfer; Denying Defendants' Motion to Sever & Stay Case Against Mayday.]

Dated:  October 9th, 2025

Sean T. O'Kelly, O'Kelly & O'Rourke, LLC, of Wilmington, DE; Michael B. Marion, Bycer & Marion, PLC, of Phoenix, AZ.  Attorneys for Plaintiff Disruptive Resources, LLC.

Francis DiGiovanni and Thatcher A. Rahmeier, Faegre, Drinker, Biddle & Reath LLP, of Wilmington, DE; Mark P. Walters, Lowe Graham Jones PLLC, of Seattle, WA.  Attorneys for Defendants Ballistic Barrier Products Inc. and Mayday Security Solutions LLC.

Choe-Groves, Judge:  This matter involves patent infringement claims filed

by Disruptive Resources, LLC ("Plaintiff" or "Disruptive Resources") against

Ballistic Barrier Products Inc. and Mayday Security Solutions LLC (collectively,

"Defendants"), alleging infringement of seven patents involving security products for ballistic protective blinds and barriers.

For the reasons discussed below, the Court denies Defendants' Motion to Dismiss and Renewed Motion to Transfer and denies Defendants' Motion to Sever & Stay Case Against Mayday.

## I.    Background

Disruptive Resources is a company organized and operating under the State of Wyoming.  Am. Compl. ¶ 12 (D.I. 29).  Disruptive Resources is the exclusive owner by assignment of U.S. Patents Nos. 10,473,437 ("the '437 Patent"), 11,561,070 ("the '070 Patent"), 11,566,872 ("the '872 Patent"), 11,828,574 ("the '574 Patent"), 11,828,575 ("the '575 Patent"), 11,879,707 ("the '707 Patent"), and 11,920, 905 ("the '905 Patent") (collectively, "Asserted Patents"), and holds all rights, title, and interest in them.  Am. Compl. ¶¶ 22–28 (D.I. 29).

The '437 Patent is titled "Bullet Proof Blinds" and was issued by the U.S. Patent and Trademark Office ("USPTO") on November 12, 2019.  Id. at Ex. C ("'437 Patent") (D.I. 29-3).  The '070 Patent is titled "Bullet Proof Barriers" and was issued by the USPTO on January 24, 2023.  Id. at Ex. D ("'070 Patent") (D.I. 29-4).  The '872 Patent is titled "Bullet Proof Barriers" and was issued by the USPTO on January 31, 2023.  Id. at Ex. E ("'872 Patent") (D.I. 29-5).  The '574 Patent is titled "Bullet Proof Barriers" and was issued by the USPTO on November

Court No. 1:24-cv-00321-JCG                                              Page 3

28, 2023.  Id. at Ex. F ("'574 Patent") (D.I. 29-6).  The '575 Patent is titled "Bullet

Proof Barriers" and was issued by the USPTO on November 28, 2023.  Id. at Ex. G

("'575 Patent") (D.I. 29-7).  The '707 Patent is titled "Bullet Proof Barriers" and

was issued by the USPTO on January 23, 2024.  Id. at Ex. H ("'707 Patent") (D.I.

29-8).  The '905 Patent is titled "Anti-ballistic Laminate Manufacturing Method

and Products" and was issued by the USPTO on March 5, 2024.  Id. at Ex. I ("'905

Patent") (D.I. 29-9).

     The Amended Complaint makes the following allegations:

     Ballistic Barrier Products Inc. ("Ballistic") is a domestic corporation,

organized and operating under the laws of Delaware, with a manufacturing facility

in Tennessee.  Am. Compl. ¶¶ 13, 15.  Mayday Security Solutions ("Mayday") is a

domestic limited liability company, organized and operating under the laws of

Delaware, with a contact address in South Carolina.  Id. at ¶¶ 14, 16.

     Ballistic manufactures the Accused Products, including ballistic protective

blinds and barriers as described and claimed in the Asserted Patents, for sale

through its website and Mayday's website, and sells the Accused Products directly

and to Mayday for sale to the public.  Id. ¶¶ 30–31.  Ballistic manufactures a multi-

layer flexible anti-ballistic laminate comprising a plurality of individual sheets of

material sewed together as layer for use in manufacturing the Accused Products.

Id. ¶ 32.

On March 29, 2021, Disruptive Resources executed a Technology Agreement with Astra Veda Corporation ("Astra Veda") for the purposes of licensing the to-be-formed Ballistic as a co-investment affiliate of Astra Veda to make and sell various products disclosed and claimed in the Asserted Patents and licensed products.  Id. ¶ 33.  On May 5, 2021, Ballistic was formed under the laws of Delaware, with Andy Finch having an ownership share and being named partner.  Id. ¶ 36.  On September 1, 2021, Astra Veda claimed that it was terminating the Technology Agreement along with its co-investment affiliate Ballistic.  Id. ¶ 38.  On May 24, 2022, Astra Veda and Ballistic filed a joint complaint against Disruptive Resources in the Maricopa County Superior Court of Arizona, seeking a judicial declaration that the Technology Agreement between the parties was terminated and acknowledging that Ballistic was formed to develop the technology licensed under the Technology Agreement and manufacture products licensed by the Technology Agreement.  Id. ¶ 39.  The Technology Agreement included a listing of Disruptive Resources' patents, including the Asserted Patents and patent applications, and all related patents and patent applications from the Asserted Patents and patent applications, including all divisional and continuation applications.  Id. ¶¶ 40–41.

On August 30, 2022, Mayday's predecessor, BPA Solutions, issued a press release announcing "the completion of a new [two]-year distributor agreement with

Ballistic Barrier Products" and in particular, as "the master distributor of the revolutionary bullet-resistant window shade and door panel technology to K-12 public and private schools nationwide." Id. ¶ 49. The press release stated further that "[t]his exclusive agreement represents a new chapter for BPA Solutions, as they add another product line focused on assisting schools in creating and maintaining a safer environment." Id.

The Amended Complaint alleges direct (either individually or jointly), indirect, and willful infringement of at least Claim 24 of the '437 Patent (Count I); direct (either individually or jointly), indirect, and willful infringement of at least Claim 1 of the '070 Patent (Count II); direct (either individually or jointly), indirect, and willful infringement of at least Claim 1 of the '872 Patent (Count III); direct (either individually or jointly), indirect, and willful infringement of at least Claims 1 and 19 of the '574 Patent (Count IV); direct (either individually or jointly), indirect, and willful infringement of at least Claim 1 of the '575 Patent (Count V); direct (either individually or jointly), indirect, and willful infringement of at least claim 1 of the '707 Patent (Count VI); direct, indirect, and willful infringement of at least Claim 29 of the '905 Patent (against Ballistic) (Count VII); and trade secret misappropriation under 18 U.S.C. § 1836 (against Ballistic) (Count VIII). Id. at ¶¶ 60–167

On December 4, 2024, Defendants moved to dismiss the First Amended

Complaint and filed a Renewed Motion to Transfer ("Renewed Motion to

Transfer" or "Motion to Dismiss").  Defs.' Mot. Dismiss Pl.'s Am. Compl. Failure

State Claim Under Fed. R. Civ. P. 12(b)(6) & Renewed Mot. Transfer Pursuant 28

U.S.C. § 1404 ("Defs.' Mot. Dismiss & Renewed Mot. Transfer") (D.I. 31); Defs.'

Opening Br. Supp. Mot. Dismiss Pl.'s Am. Compl. Failure State Claim Under Fed.

R. Civ. P. 12(b)(6) & Renewed Mot. Transfer Pursuant 28 U.S.C. § 1404 ("Defs.'

Br. Mot. Dismiss & Renewed Mot. Transfer") (D.I. 32).  Defendants move to

dismiss Plaintiff's claims for joint, induced, contributory, and willful patent

infringement, as well as trade secret misappropriation, and seek to transfer this

action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the

Eastern District of Tennessee.  Defs.' Mot. Dismiss & Renewed Mot. Transfer at 1.

Plaintiff opposed the motion, and Defendants filed their reply brief.  Pl.'s Resp.

Opp'n Defs.' Part. Mot. Dismiss & Mot. Transfer ("Pl.'s Resp. Br. Mot. Dismiss

Renewed Mot. Transfer") (D.I. 34); Defs.' Reply Br. Supp. Mot. Dismiss & Mot.

Transfer ("Defs.' Reply Br. Mot. Dismiss & Renewed Mot. Transfer") (D.I. 39).

On January 14, 2025, Defendants filed a motion to sever and stay the case

against Mayday ("Motion to Sever & Stay").  Defs.' Mot. Sever Stay Case Against

Def. Mayday ("Defs.' Mot. Sever Stay Case") (D.I. 37); Opening Br. Supp. Defs.'

Mot. Sever & Stay Case Against Def. Mayday ("Defs.' Br. Mot. Sever & Stay

Case") (D.I. 39); Decl. Andy Finch Supp. Defs.' Mot. Sever & Stay Case Against

Mayday ("Decl. Andy Finch") (D.I. 40); Decl. Ryan Cowell Supp. Defs.' Mot.

Sever & Stay Case Against Mayday ("Decl. Ryan Cowell") (D.I. 41).  Defendants

move to sever and stay all claims asserted by Plaintiff against Mayday, an

independent distributor/reseller, under the customer suit doctrine pending final

resolution of those same claims against Ballistic, the exclusive manufacturer of the

Accused Products.  Defs.' Br. Mot. Sever & Stay Case at 1.  Plaintiff opposed the

motion, and Defendants filed their reply brief.  Pl.'s Resp. Opp'n Defs.' Mot.

Sever Stay Case ("Pl.'s Resp. Br. Mot. Sever Stay Case") (D.I. 47); Decl. Michael

B. Marion (D.I. 48); Defs.' Reply Br. Mot. Sever & Stay Case Against Def.

Mayday ("Defs.' Reply Br. Mot. Sever Stay Case") (D.I. 50).

## II.    Motion to Sever & Stay and Motion to Transfer

Defendants argue first that this case should be transferred to the Eastern

District of Tennessee pursuant to 28 U.S.C. § 1404 because the balance of the

public and private factors in <u>Jumara v. State Farm Ins. Co.</u> ("<u>Jumara</u>"), 55 F.3d 873

(3d Cir. 1995), weigh in favor of transferring this action.  Mot. Dismiss &

Renewed Mot. Transfer at 1; Defs.' Br. Mot. Dismiss & Renewed Mot. Transfer at

15–20.  In its reply brief, however, Defendants concede that the instant matter

could not have been brought in the Eastern District of Tennessee due to improper

venue based on Mayday, and argue now that transfer under 28 U.S.C. § 1404

would be appropriate only if claims against Mayday are first severed and stayed based on the customer-suit exception. Defs.' Reply Br. Mot. Dismiss & Renewed Mot. Transfer at 9; see Defs.' Br. Mot. Sever & Stay Case.

Disruptive Resources argues that under 28 U.S.C. § 1400(b), the only venue in which it could have brought this action against Defendants is Delaware, where they are both incorporated, as neither Defendant identifies where the infringement occurred. Pl.'s Resp. Br. Mot. Dismiss & Transfer Case at 10–12. Mayday does not contest its established place of business in South Carolina while Ballistic Barriers has a place of business in Tennessee. Id.

Under 28 U.S.C. § 1404(a), a district court has "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." Jumara, 55 F.3d at 883 (citing Stewart Org. v. Ricoh Corp., 487 U.S. 22, 30–31(1988)); 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."). The court engages in a two-step inquiry. First, the court determines whether the action could have been brought originally in the proposed transferee forum and then asks whether transfer would best serve the convenience of the parties and witnesses, as well as the interests of justice. Smart Audio Techs., LLC

v. Apple, Inc., 910 F. Supp. 2d 718, 723–24 (D. Del. 2012).  It is the defendant's

responsibility to demonstrate that transfer is appropriate at each step, Jumara, 55

F.3d at 879–80, and "unless the balance of convenience of the parties is strongly in

favor of defendant, the plaintiff's choice of forum should prevail."  Shutte v.

Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (citing Owatonna Mfg. Co. v.

Melroe Co., 301 F. Supp. 1296, 1307 (D. Minn. 1969)).

Before the Court may decide on the Motion to Dismiss & Renewed Motion

to Transfer, it must first turn to Defendants' Motion Sever & Stay as determining

whether the claims against Mayday may be severed and stayed will inform whether

the instant matter may be transferred to the Eastern District of Tennessee.

Defendants move to sever and stay all claims against Mayday in response to

Disruptive Resources' argument regarding improper venue to transfer the instant

matter to the Eastern District of Tennessee.  See Defs.' Br. Mot. Sever & Stay

Case.  Defendants argue that the claims against Mayday should be stayed

because: (1) a stay will simplify the issues for trial; (2) the resolution of Plaintiff's

allegations against Ballistic will necessarily resolve the allegations against Mayday

because Ballistic's liability as the exclusive manufacturer of the Accused Products

is a predicate to any recovery from Mayday; and (3) there will not be any undue

prejudice or tactical disadvantage to Plaintiff as the instant matter is in its early

stages.  Id. at 1–2.

When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally takes precedence.  Spread Spectrum Screening LLC v. Eastman Kodak Co., 657 F.3d 1349, 1357 (Fed. Cir. 2011); Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990).  This "customer-suit" exception to the "first-to-file" rule exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the "true defendant" in the dispute.  Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737–38 (1st Cir.1977).  The Parties disagree over the relationship between Ballistic and Mayday, and whether such a relationship warrants the application of the customer-suit exception.  See Defs.' Br. Mot. Sever & Stay Case at 3–8; Pl.'s Resp. Br. Mot. Sever & Stay Case at 3–6.

Citing to the Declarations of Andy Finch and Ryan Cowell, Defendants contend that Mayday is an independent distributor/reseller under the customer suit doctrine and the claims against Mayday may be severed and stayed.  Defs.' Br. Mot. Sever & Stay Case at 3–8.  Defendants argue that the resolution of the same claims against Ballistic and its liability as the exclusive manufacturer is a predicate to any recovery from Mayday because Ballistic is the real party in interest or the "true defendant," which renders any claims against Mayday as peripheral because

Mayday is merely a reseller of products manufactured exclusively by Ballistic.  Id.

The Declarations of Andy Finch and Ryan Cowell provide the following facts:

      Ballistic was founded in 2021 by Andy Finch, Ronald Egress, and Mick

Davis, and manufactures bullet resistant barriers for covering windows, doors,

hallways, and other openings in residential and commercial buildings.  Decl. Andy

Finch ¶¶ 3–4.  The formation of Ballistic in 2021 originated from the founders'

shared desire to manufacture and sell bullet resistant barriers licensed by

Disruptive Resources.  Id. ¶ 4.  Ballistic began work in the summer of 2021 to

commercialize bullet resistant barriers, working under the assumption that it could

make them profitable according to specifications and drawings disclosed in the

patents-in-suit and pursuant to a sublicense that Disruptive Resources provided to

Astra Veda.  Id. ¶ 6.  By September 1, 2021, Ballistic learned that the bullet

resistant barriers disclosed and claimed in Mr. Adian's patents could neither be

certified to industry standards nor made profitably.  Id. ¶ 7.  Astra Veda and

Ballistic then terminated the license with Disruptive Resources, and Ballistic

resumed plans to commercialize bullet proof barriers according to new and

different designs and specifications.  Id.

      In the fall of 2023, Mayday became one of a dozen other resellers of

Ballistic's bullet resistant barriers.  Id. ¶ 8.  Mayday is an independent distributor

that began selling bullet resistant barrier products manufactured by Ballistic in

2023.  Decl. Ryan Cowell ¶ 3.  While Mayday sells and markets the products, it did not modify or add components to the bullet resistant barriers made by Ballistic and was not involved in the design and manufacturing of the products.  Id. ¶¶ 4–5; Decl. Andy Finch ¶ 8.  Ballistic has agreed to defend and indemnify Mayday from the claims of infringement and trade secret misappropriation arising out of Mayday's sale of Ballistic's products.  Decl. Ryan Cowell ¶ 6; Decl. Andy Finch ¶ 9.

Plaintiff argues that Mayday is an essential defendant in this matter because it is involved in the manufacture, installation, testing, distribution, and selling of the Accused Products and was formed for the sole purpose of collaborating and partnering with Ballistic, as shown through its joint promotional materials and marketing efforts.   Pl.'s Resp. Br. Mot. Sever & Stay Case at 4–6 (citing Decl. Michael B. Marion at Exs. 1–4).  Plaintiff contends that Mayday is essential for proof of both its own infringement and Ballistic's indirect infringement.  Id.

Based on the evidence and arguments presented by the Parties, Ballistic is not the "true defendant" and the customer-suit exception does not apply in this matter.  The Amended Complaint alleges direct, induced, and indirect infringement with joint liability from both Ballistic and Mayday.  See Am. Compl.  The public marketing and advertisement materials submitted by Plaintiff demonstrate that discovery from Mayday would be necessary to resolve the claims in this case related to

Defendants' joint operations and infringement.  The Court agrees with Plaintiff that Mayday is necessary to prove the indirect infringement of Ballistic, either through Mayday's partial or entire infringement of certain asserted claims.  If certain patents are infringed only by Mayday, and Plaintiff could be made whole only through recovery from Mayday, then Plaintiff will be prejudiced by the severing or staying of the claims against Mayday.

Therefore, the Court concludes that the claims against Mayday should neither be severed, nor stayed.

Without the severance of claims against Mayday, this action could not have been brought originally in the proposed transferee forum under 28 U.S.C. § 1404, therefore this matter cannot be transferred to the Eastern District of Tennessee. See Smart Audio Techs., LLC, 910 F. Supp. 2d at 723–24; Jumara, 55 F.3d at 879–80.

Accordingly, the Court denies Defendants' Motion to Sever & Stay the claims against Mayday and denies Defendants' Renewed Motion to Transfer this action to the Eastern District of Tennessee.

## III.    Motion to Dismiss

Defendants move to dismiss Plaintiff's claims against Ballistic and Mayday for joint patent infringement and indirect patent infringement.  Defs.' Mot. Dismiss Renewed Mot. Transfer at 1.  Defendants also move to dismiss the willful

infringement claims against Mayday and the trade secret misappropriation claim

against Ballistic.  Id.  For the reasons that follow, the Court denies Defendants'

Motion to Dismiss.

### A.    Legal Standard

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short

and plain statement of the claim showing that the pleader is entitled to relief.  Fed.

R. Civ. P. 8(a)(1).  If pleadings fail to state a claim, in whole or in part, on which a

court may grant relief, a defendant may seek to dismiss a complaint under Federal

Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Id.  Plausibility requires "more than a sheer possibility that a

defendant has acted unlawfully."  Id.  In considering a motion to dismiss, the Court

must assume the factual allegations contained in the complaint to be true and draw

all reasonable inferences in favor of the non-moving party.  Twombly, 550 U.S.

555–56.  However, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice" to state a claim.  Iqbal,

556 U.S. at 679.

In patent infringement cases, allegations of infringement are governed by the

Iqbal/Twombly pleading standard.  Golden v. Apple Inc., 819 F. App'x 930, 930–

31 (Fed. Cir. 2020).  There must be some factual allegations that, when taken as

true, articulate why it is plausible that the accused product infringes the patent

claim.  Bot M8 LLC v. Sony Corp., 4 F.4th 1342, 1353 (Fed. Cir. 2021).

## B.    Joint Infringement

Defendants argue that Plaintiff has failed to state a claim of joint

infringement of the Asserted Patents because the Complaint provides no

allegations regarding the relationship between Defendants that meet the joint

infringement pleading requirements.  Defs.' Br. Mot. Dismiss & Renewed Mot.

Transfer at 4–5.  Plaintiff responds that because Defendants do not challenge the

direct infringement claims, it is possible that each Defendant performs some or all

of the infringing parts of any claim of the Asserted Patents in the course of their

joint enterprise, but Plaintiff is not required to allege every potential combination

of such infringement that can be inferred from the allegations.  Pl.'s Resp. Br. Mot.

Dismiss & Renewed Mot. Transfer at 6.

A claim of joint infringement requires "pleading facts sufficient to allow a

reasonable inference that all steps of the claimed method are performed and

either (1) one party exercises the requisite 'direction or control' over the [other's]

Court No. 1:24-cv-00321-JCG                                                    Page 16

performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." <u>Lyda v. CBS Corp.</u>, 838 F.3d 1331, 1339 (Fed. Cir. 2016). The court in <u>Lyda</u> concluded that there were "no allegations [. . .] that can form the basis of a reasonable inference that each claim step was performed by or should be attributed to Defendants," after noting the absence of any facts alleging direction or control, including how the direction or control occurred and the relationship between the defendants and the third parties who were committing the infringing acts. <u>Id.</u> at 1340.

The Amended Complaint alleges direct infringement against both Ballistic and Mayday, stating that that "[Ballistic] and Mayday have directly infringed—either individually and/or jointly—and are still directly infringing" the claims of the Asserted Patents "by making, using, selling, installing, and/or offering to sell the Accused Products." Am Compl. ¶¶ 61, 63, 75, 77, 89, 91, 103, 105, 117, 119, 131, 133. The Amended Complaint also alleges induced infringement against both Ballistic and Mayday, stating that "[Ballistic] and Mayday have induced [infringement]—either individually and/or jointly—and are still inducing infringing" the claims of the Asserted Patents "by making, selling, installing, using, and/or offering to sell the Accused Products and/or instructing others to do so." <u>Id.</u> ¶¶ 62, 76, 90, 104, 118, 132.

The extent of the relationship between Ballistic and Mayday alleged in the Amended Complaint is that "Mayday and [Ballistic] have jointly marketed, offered to sell and sold the LifeShield+Products, including for example at the 2023 Global Security Exchange ("GSX") Conference where Mayday and [Ballistic] shared a booth and Mayday invited customers to '[c]ome hang out with the #Mayday team and Ballistic Barrier Products @GSX this week,'" and that the "extensive partnership between [Ballistic] and Mayday [. . .] demonstrates that Mayday has extensive knowledge of the technology [Ballistic] has commercialized through the Accused Products[.]"  Am. Compl. ¶¶ 52–54.

In its opposition brief, Plaintiff contends that "Mayday was created specifically as part of the joint enterprise with [Ballistic], possibly as a way for [Ballistic] to evade judgment in this case[.]"  Pl.'s Resp. Br. Mot. Dismiss & Renewed Mot. Transfer at 6.  Plaintiff argues that "a reasonable inference is that Mayday must have known that (1) [Ballistic] was created for the purpose of commercializing [Disruptive Resources'] technology and patents; (2) [Ballistic] would not have a right to [Disruptive Resources'] technology and patents without a subsisting license agreement; and (3) [Ballistic] has repudiated the license agreement with [Disruptive Resources]."  Id.

Based on facts such as the partnership and joint marketing, sharing of a booth, and joint-solicitation of customers, the Amended Complaint pleads

sufficient allegations that one party exercises the requisite "direction or control" over the other's performance or that both Ballistic and Mayday form a joint enterprise such that performance of every step is attributable to the controlling party.  See Lyda, 838 F.3d at 1340.

Plaintiff has adequately pled joint infringement for its direct and induced infringement claims.  Therefore, the Court denies Defendants' motion to dismiss Counts I–VI.

### C.    Indirect Infringement

To state a claim for indirect infringement, a party must adequately plead either induced or contributory infringement.  In resolving whether indirect infringement is sufficiently pled, the Court must first determine whether Plaintiff sufficiently alleged direct infringement of the Asserted Patents.  See In Re Bill of Lading Transm'n and Processing Sys. Patent Litig., 681 F.3d 1323, 1333 (Fed. Cir. 2012) ("It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement.") (internal quotation marks omitted).  Here, Defendants do not contest that Plaintiff sufficiently alleged direct infringement, and therefore, the Court proceeds to the remaining elements in the induced and contributory infringement analyses respectively.

### 1.    Induced Infringement

To plead induced infringement under 35 U.S.C. § 271(b), a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement.  Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017); see also 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer.").  This requires a plaintiff to allege facts supporting a reasonable inference that the defendant had knowledge of the patent-in-suit.  Global-Tech Appliances, Inc. v. SEB S.A. ("Global-Tech"), 563 U.S. 754, 764–66 (2011); see also bioMérieux, S.A. v. Hologic, Inc., No. 18-cv-00021-LPS, 2018 WL 4603267, at *5 (D. Del. Sept. 25, 2018).  "[U]nlike direct infringement, the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement."  Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 904 (Fed. Cir. 2014) (citing Global-Tech, 563 U.S. at 764–66).  Without knowledge of infringement, there is not enough to establish liability for induced infringement.  See Global-Tech, 563 U.S. at 765–66.  If actual knowledge is not adequately pled, a patentee can establish knowledge of patent infringement by alleging that the defendant was willfully blind, which requires showing that the defendant: (1) subjectively believed that there was a high probability that the induced acts

constituted infringement; and (2) took deliberate actions to avoid learning of that fact.  Id. at 766–69.

Specific intent is a distinct element from the knowing inducement of infringing acts.  "A party asserting a claim of induced infringement must plead facts plausibly demonstrating that there has been direct infringement, and that 'the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.'" Tonal Sys., Inc. v. ICON Health & Fitness, Inc., No. 20-cv-01197-LPS, 2021 WL 1785072, at *3 (D. Del. May 5, 2021) (quoting Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009)).

Defendants argue that Plaintiff has failed to state a claim for induced infringement of the Asserted Patents because the allegations do not plead facts supporting an inference that Mayday had pre-suit knowledge of the Asserted Patents.  Defs.' Br. Mot. Dismiss & Renewed Mot. Transfer at 9.  Defendants assert that Plaintiff also failed to plead facts indicating that both Defendants had intent to induce, or knowledge that the induced acts amounted to infringement.  Id. Plaintiff responds that Mayday's knowledge is pled through allegations regarding the relationship between Mayday and Ballistic, or alternatively, that the knowledge requirement is met through Mayday's alleged willful blindness.  Pl.'s Resp. Br. Mot. Dismiss & Renewed Mot. Transfer at 3–6.  Plaintiff contends that it has

identified adequately the claim elements of the Asserted Patents that may be
infringed by third parties through Defendants' inducement.  Id. at 6–7.

The Amended Complaint alleges that Plaintiff entered into a Technology
Agreement with Astra Veda in March 2021 to license the to-be-formed Ballistic as
a co-investment affiliate of Astra Veda and to make and sell various products
disclosed and claimed in the Asserted Patents.  Am. Compl. at ¶ 33.  The
Technology Agreement disclosed the Asserted Patents and their applications, and a
consultant for the agreement, Andy Finch, became a partner of Ballistic marketing
the Accused Products.  Id. at ¶¶ 35–37.  In September 2021, Astra Veda claimed
that it was terminating the Technology Agreement along with Ballistic.  Id. at ¶ 38.
In May 2022, Astra Veda and Ballistic filed suit in Arizona Superior Court seeking
a judicial declaration that the Technology Agreement was terminated, and this case
is ongoing.  Id. at ¶ 39.

Based on these allegations, the Court concludes that the Amended
Complaint plausibly pleads that Ballistic had knowledge and notice of the Asserted
Patents.  The Amended Complaint also adequately pleads that Ballistic had
specific intent to induce infringement by the users of the Accused Products through
allegations regarding the distribution agreement Ballistic executed with Mayday
and the marketing efforts to promote the Accused Products.  See, e.g., id. at ¶ 49
(allegation including excerpts from a press release regarding the distribution

agreement between Ballistic and Mayday); id. at ¶ 52 (allegation including an image of Ballistic and Mayday sharing a booth to market, offer, and sell the accused products at a security conference).  Therefore, the Amended Complaint provides plausible allegations of induced infringement of the Asserted Patents against Ballistic.

With regard to Mayday, the Court concludes that the Amended Complaint contains factual allegations that give rise to a reasonable inference that Mayday had pre-suit knowledge of the Asserted Patents.  Plaintiff alleges that Mayday's knowledge is based on Mayday and Ballistic having an "extensive partnership" and that "Mayday has extensive knowledge of the technology [Ballistic] has commercialized through the Accused Products, namely [Disruptive Resources'] patents and licensed technology, since at least August 30, 2022," which is the date that Mayday entered into a distribution agreement with Ballistic.  Am Compl. at ¶ 54.  The existence of a distribution agreement and extensive partnership between Defendants suggests plausibly that Mayday knew or should have known about Disruptive Resources' patents.

Accordingly, Counts I–VI sufficiently plead induced infringement against Ballistic and Mayday and Count VII sufficiently pleads induced infringement against Ballistic, enough to obtain discovery on the extent of the relationship

between the Defendants and as to Mayday's knowledge.  The Court denies the

motion to dismiss Counts I–VII.

### 2.      Contributory Infringement

To establish contributory infringement, a plaintiff must show that an alleged

contributory infringer has sold, offered to sell, or imported into the United States a

component of an infringing product while "knowing the same to be especially

made or especially adapted for use in an infringement of such patent, and not a

staple article or commodity of commerce suitable for substantial noninfringing

use[.]"  35 U.S.C. § 271(c).  At the pleading stage, a plaintiff must allege facts that

establish: "(1) that there is direct infringement, (2) that the accused infringer had

knowledge of the patent, (3) that the component has no substantial noninfringing

uses, and (4) that the component is a material part of the invention."  Fujitsu Ltd. v.

Netgear Inc., 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Here, Defendants do not contest the allegations of direct infringement.

Rather, Defendants argue that Mayday did not possess pre-suit knowledge of the

Asserted Patents.  Defs.' Br. Mot. Dismiss & Renewed Mot. Transfer at 9.

Defendants aver that Plaintiff also failed to allege a component or material for use

in a patented process constituting a material part of the invention, knowledge by

Defendants that the component was especially made or especially adapted for use

in an infringement of such patents, and that the component is not a staple or article

suitable for substantial noninfringing use.  <u>Id.</u>  Plaintiff responds that it has

identified the elements that may be infringed by third parties at the direction of the

Defendants through contributory infringement, but avers that it is not required to

provide every possible combination of contributory infringement.  Pl.'s Resp. Br.

Mot. Dismiss & Renewed Mot. Transfer at 6–7.

 The Amended Complaint alleges that Defendants make, use, offer, and sell

products that include ballistic protective blinds and barriers as described and

claimed in the Asserted Patents, without authority from Plaintiff.  Am. Compl. at

¶ 29.  The Amended Complaint states further that Ballistic "[manufactures] a

multi-layer flexible anti-ballistic laminate comprising a plurality of individual

sheets of material sewed together as layer for use in manufacturing the Accused

Products."  <u>Id.</u> at ¶ 32.  Exhibit B provides depictions of the Accused Products, and

Plaintiff's Claim Charts in Exhibit A detail how the Accused Products infringe the

Asserted Patents.  <u>Id.</u> at Ex. B (D.I. 29-2); Ex. A (D.I. 29-1).  For Counts I–VII

alleging patent infringement, the Amended Complaint states that Defendants

contributorily infringed the Asserted Patents "through the using, making, selling,

installing, and/or offering to sell any of the Accused Products," which are

identified Exhibit B.  Am. Compl. at ¶¶ 63, 67, 77, 81, 91, 95, 105, 109, 119, 123,

133, 137, 147, 151, Ex. B.  These Counts allege further that there is "no substantial

Court No. 1:24-cv-00321-JCG                                            Page 25

non-infringing use of any of the Accused Products" identified in Exhibit B.  Id. at

¶¶ 67, 81, 95, 109, 123, 137, 151.

The Court concludes that Plaintiff has met its pleading burden with regard to

its claims of contributory infringement against Ballistic.  As discussed earlier, the

direct infringement allegations are not contested by Ballistic, and Plaintiff alleged

plausibly that Ballistic had knowledge of the Asserted Patents.  The Amended

Complaint identifies the Accused Products and provides a detailed explanation of

how they allegedly infringe the ballistic protective blinds and barriers claimed in

the Asserted Patents, and alleges that there are no substantial, noninfringing uses.

That is all that is required of Plaintiff at this stage of the case.  See Fujitsu Ltd.,

620 F.3d at 1326.

With regard to Plaintiff's contributory infringement claims against Mayday,

the Court concludes that Plaintiff has adequately pled that Mayday committed pre-

suit contributory infringement due to Defendants' partnership, distribution

agreement, and joint marketing and solicitation of customers, which is enough to

meet the threshold to defeat a motion to dismiss and to proceed to discovery.  See

Iqbal/Twombly.

Accordingly, the Court denies the motion to dismiss Counts I–VII for

contributory infringement against both Defendants.

### D.    Willful Infringement Against Mayday

Under 35 U.S.C. § 284, the Court may increase the amount of damages assessed by up to three times.  35 U.S.C. § 284.  The U.S. Supreme Court has observed that enhanced damages:

> are not to be meted out in a typical infringement case, but are instead designed as a "punitive" or "vindictive" sanction for egregious infringement behavior.  The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or— indeed—characteristic of a pirate.

Halo Elecs., Inc. v. Pulse Elecs. Inc. ("Halo"), 579 U.S. 93, 103–04 (2016).

For willful infringement claims, "the patentee must allege facts in its pleading plausibly demonstrating that the accused infringer had committed subjective willful infringement as of the date of the filing of the willful infringement claim[.]"  Välinge Innovation AB v. Halstead New England Corp., No. 16-cv-1082-LPS-CJB, 2018 WL 2411218, at *12 (D. Del. May 29, 2018), report and recommendation adopted, 2018 WL 11013901 (D. Del. Nov. 6, 2018). "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."  Halo, 579 U.S. at 105; see also WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages.").

Subjective willfulness may be found when "the risk of infringement 'was either known or so obvious that it should have been known to the accused infringer.'" Halo, 579 U.S. at 101 (quoting In re Seagate Techs., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).

Defendants argue that Plaintiff has failed to plausibly plead its willful infringement claims against Mayday, because the Amended Complaint does not contain factual allegations that create a reasonable inference that Mayday had pre-suit knowledge of the Asserted Patents. Defs.' Br. Mot. Dismiss & Renewed Mot. Transfer at 6–8. Defendants aver that the Amended Complaint also fails to sufficiently allege post-suit knowledge of the Asserted Patents because the Complaint cannot serve as the basis for Mayday's knowledge. Id. at 6. Plaintiff states that Mayday's knowledge is pled sufficiently through allegations regarding the close business relationship between Mayday and Ballistic (including Plaintiff's assertion that Mayday was formed for the primary purpose of distributing Ballistic's products, has an exclusive distributing relationship, jointly marketed, and shared a booth), or alternatively, that the knowledge requirement is met through Mayday's alleged willful blindness (including Mayday's alleged knowledge about a public lawsuit filed in Arizona seeking a declaratory judgment against Plaintiff). Pl.'s Resp. Br. Mot. Dismiss & Renewed Mot. Transfer at 3–6.

The Court concludes that Plaintiff has met the Iqbal/Twombly standard to defeat a motion to dismiss and has adequately pled that Mayday had pre-suit knowledge.  At the pleading stage, Plaintiff must allege that the accused infringer: (1) was aware of the patent, (2) infringed the patent after becoming aware of its existence, and (3) knew or should have known that its conduct amounted to infringement.  See Välinge Innovation AB, 2018 WL 2411218, at *13.  Plaintiff provided plausible allegations regarding Mayday's pre-suit knowledge of the Asserted Patents and the circumstances through which Mayday acquired such knowledge, and discovery may reveal further information about Mayday's knowledge that will be relevant to the willful infringement analysis. Because the Amended Complaint states adequately that Mayday had pre-suit knowledge and may have knowingly infringed the Asserted Patents, or alternatively was willfully blind, Plaintiff's pre-suit willfulness claims are sufficiently pled.

The Court turns now to whether Plaintiff adequately alleged post-suit willful infringement against Mayday.  Defendants dispute whether post-suit knowledge may support claims for willful infringement.  Defs.' Br. Mot. Dismiss & Renewed Mot. Transfer at 6 (citing VLSI Tech. LLC v. Intel Corp., No. CV 18-966-CFC, 2019 WL 1349468, at * 2 (D. Del. Mar. 26, 2019) ("[T]he complaint itself cannot serve as the basis for a defendant's actionable knowledge.")).  This Court has held

previously that the original complaint, later superseded by an amended complaint, is sufficient to support a post-suit willful infringement claim at the motion to dismiss stage.  See Staton Techiya, LLC v. Harman Int. Indus., Inc., 734 F. Supp. 3d 354, 368 (D. Del. 2024).  This approach follows many similar holdings in this district that concluded that notice from a complaint is sufficient for indirect and willfulness claims because there is not an appreciable difference between a pre-complaint notice letter and the filing of an original complaint that is later superseded by an amended complaint.  Id. (citing Ravgen, Inc. v. Ariosa Diagnostics, Inc., No. CV 20-1646-RGA-JLH, 2021 WL 3526178, at *2 (D. Del. Aug. 11, 2021) (involving a second amended complaint for post-suit willful infringement claim); DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc., No. CV 18-098 (MN), 2019 WL 3069773, at *1 (D. Del. July 12, 2019) (involving a second amended complaint for post-suit induced infringement claim); ICON Health & Fitness, Inc. v. Tonal Sys., Inc., No. CV 21-652-LPS-CJB, 2022 WL 611249, at *1 (D. Del. Feb. 7, 2022) (involving a first amended complaint for pre-suit induced and willfulness claims but noting that re-pleading is not necessary for post-suit claims)).

Here, Plaintiff filed a Complaint with allegations of willful infringement against Mayday and filed an Amended Complaint eight months later.  See Compl. (D.I. 1); Am. Compl.  The Court concludes that Mayday was on notice of the

Asserted Patents and the allegations of infringement at least as early as the filing of the Complaint and "there is no reason [Mayday] should not be answerable for willful infringement after that date if [Plaintiff] can prove the requisite level of culpable behavior during the post-suit period." <u>Ravgen, Inc.</u>, 2021 WL 3526178, at *4.

Accordingly, Plaintiff has sufficiently pled Counts I–VI of the Amended Complaint for pre-suit and post-suit willful infringement.

### E.    Trade Secret Misappropriation Against Ballistic

Defendants move to dismiss Count VIII, arguing that Plaintiff failed to sufficiently state a claim for trade secret misappropriation against Ballistic because: (1) the Amended Complaint has not identified the alleged trade secrets with reasonable particularity, especially in view of multiple published patents on the same technical subject matter; and (2) the claim is barred by a three-year statute of limitations.  Defs.' Br. Mot. Dismiss & Renewed Mot. Transfer at 9–14. Plaintiff responds that the claim is not time-barred and the Amended Complaint identifies the proprietary technology that Defendant misappropriated with enough specificity to place Defendant on notice of the claim, which is all that is required. Pl.'s Resp. Br. Mot. Dismiss & Renewed Mot. Transfer at 7–10.

The Court begins by addressing whether Plaintiff's trade secret misappropriation claim is time-barred.

## 1.    Statute of Limitations

While the statute of limitations is an affirmative defense, courts may

consider that defense at the motion to dismiss stage if "the time alleged in the

statement of a claim shows that the cause of action has not been brought within the

statute of limitations." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)

(internal citations omitted). However, "if the bar is not apparent on the face of the

complaint, then it may not afford the basis for a dismissal of the complaint under

Rule 12(b)(6)." Id. (internal citations omitted).

Under the Defend Trade Secrets Act ("DTSA"), a plaintiff must bring its

claim within three years of the date that the misappropriation "is discovered or by

the exercise of reasonable diligence should have been discovered." See 18 U.S.C.

§ 1836(d). The statute provides that "a continuing misappropriation constitutes a

single claim of misappropriation." See id. Generally, the statute of limitations

begins to run as soon as a right to institute and maintain a suit arises. Schmidt, 770

F.3d at 250 (citing Haugh v. Allstate Ins. Co., 322 F.3d 227, 231 (3d Cir. 2003)).

Plaintiff did not include its claim of trade secret misappropriation in the

initial Complaint filed on March 12, 2024, but pled the trade secret

misappropriation claim for the first time in the Amended Complaint filed on

November 20, 2024. See Compl.; Am. Compl. The Parties dispute whether the

date that the misappropriation should have been discovered was September 1,

2021, when Ballistic gave notice of the termination of the Technology Agreement, and therefore whether the statute of limitations concluded on September 1, 2024.

Defendants argue that the misappropriation claim is time-barred because: (1) the triggering event for the alleged misappropriation was the termination of the Technology Agreement in September 2021; and (2) the Amended Complaint's addition of this claim cannot "relate back" to claims of patent infringement related to publicly-disclosed patents. Defs.' Br. Mot. Dismiss & Renewed Mot. Transfer at 9–14. Plaintiff counters that the trade secret misappropriation claim is not time-barred because: (1) the Arizona State Court has yet to rule on whether the Technology Agreement was terminated; (2) the misappropriation of trade secrets has occurred repeatedly; (3) the trade secret claim relates back to Defendants' taking of technology after attempting to terminate the Technology Agreement; and (4) Defendants' repeated requests for extensions of time to answer the Complaint created the delay that resulted in the Amended Complaint's November 2024 filing. Pl.'s Resp. Br. Mot. Dismiss & Renewed Mot. Transfer at 7–10.

To support its argument that the trade secret misappropriation claim is not time-barred because use of the trade secrets occurred repeatedly, Plaintiff cites to Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp., No 16-2499, 2017 WL 1105648, at *3–4 (E.D. Penn. Mar. 24, 2017). Pl.'s Resp. Br. Mot. Dismiss & Renewed Mot. Transfer at 9. That case is distinguishable from the case

before this Court.  In <u>Brand Energy & Infrastructure Servs., Inc.</u>, the DTSA had

been enacted recently and the district court, while analyzing holdings on the

applicability of the DTSA to misappropriations that occurred before its enactment,

concluded that the DTSA applied to misappropriations that began prior to the

DTSA's enactment if the misappropriation continued to occur after the enactment

date.  <u>Id.</u>  Plaintiff does not identify any other cases outside of such context to

support its argument that "each use of a trade secret provides a basis for a claim

under the DTSA," Pl.'s Resp. Br. Mot. Dismiss & Renewed Mot. Transfer at 9,

and the statute is clear that "a continuing misappropriation constitutes a single

claim of misappropriation." 18 U.S.C. § 1836(d).

        Regarding the dates of the Complaint and Amended Complaint, there is no

document or allegation that establishes clearly when the statute of limitations

began to run.  Defendants aver that Ballistic's notice of termination of the

Technology Agreement on September 1, 2021, is the triggering date for when

Plaintiff knew or should have known about its claim for misappropriation.  Defs.'

Br. Mot. Dismiss & Renewed Mot. Transfer at 7–8.  Defendants state that the

focus of the determination should be on when the confidential relationship was

breached.  <u>Id.</u> (citing <u>Intermedics, Inc. v. Ventritex, Inc.</u>, 822 F. Supp 634, 650–

659 (N.D. Cal. 1993); <u>Ashton-Tate Corp. v. Ross</u>, 728 F. Supp. 597, 603 (N.D.

Cal. 1989), <u>aff'd</u>, 916 F.2d 516 (9th Cir. 1990)).

The DTSA defines a "misappropriation" as the "acquisition of a trade secret" through improper means, or, the "disclosure or use of a trade secret of another" without authority and when, at the time of the use or disclosure, the alleged user knew the trade secret was "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret[.]"  18 U.S.C. § 1839(5).

Defendants' cited cases pre-date the DTSA, analyze California's trade secret law and the California legislature's focus on protecting confidential relationships, and concern motions for summary judgment which are accompanied typically with a more substantial record than is available at the motion to dismiss stage.  See Intermedics, Inc., 822 F. Supp at 650–659; Ashton-Tate Corp., 728 F. Supp. at 603.  Moreover, the acts held to be trade secret misappropriations in those cases were not the repudiation of an agreement, but rather the improper disclosure of trade secrets to a third party.  Intermedics, Inc., 822 F. Supp at 650–659 (finding disclosure of trade secrets occurred when plaintiff's former employees commenced employment with defendant); Ashton-Tate Corp., 728 F. Supp. at 603 (finding disclosure of trade secrets occurred when Defendant learned that his former partner gave plaintiff a demonstration of the technology they were developing).

Here, Defendants point to a breach of trust caused by a potential breach of contract, not from a trade secret misappropriation as defined by the statute.

Without more, it is unclear from Defendants' arguments and Plaintiff's allegations how the notice of termination of the Technology Agreement also amounts to a use or improper disclosure of Plaintiff's trade secrets. Depending on the form and details of the notice of termination, Plaintiff may not have had reason to suspect that Defendants would continue operations until Defendants filed their joint Complaint in Arizona State Court on May 24, 2022, but this is not clear at this time.

The record leaves unanswered other questions, the resolution of which is important to determining whether the statute of limitations defense has been established. See Progressive Sterilization, LLC v. Turbett Surgical LLC, No. 19-627-CFC, 2020 WL 1849709, at *4–5 (D. Del. Apr. 13, 2020), report and recommendation adopted, 2020 WL 3071951 (June 10, 2020) (denying defendant's motion to dismiss trade secret misappropriations claims as time-barred when record did not suggest clearly that plaintiff was on notice of defendant's misuse of protected information from the filing of a USPTO document). For example, the Amended Complaint alleges that Ballistic's first sale of the Accused Products occurred on December 1, 2021. Am. Compl. at ¶ 44. The sale of the Accused Products seems to support the allegation of Defendants' use of Plaintiff's trade secrets, and this date would seem to make Plaintiff's claim timely. However, there

is no further indication of whether or to what extent Plaintiff was monitoring Ballistic's sales and marketing during this period.

After considering the record, the Court cannot conclude that the trade secret misappropriation claim is barred by the statute of limitations, particularly when viewing all facts as true in favor of the non-movant at the motion to dismiss stage. The dates in the Amended Complaint do not indicate clearly that Plaintiff knew, or by the exercise of reasonable diligence should have discovered, that Defendants were misusing Plaintiff's trade secrets as of September 2021.  Resolution of this matter requires further discovery and development of the factual record, neither of which are appropriate exercises at the motion to dismiss stage.  Accordingly, the Court denies Defendants' motion to dismiss.

## 2. Particularity of Plaintiff's Trade Misappropriation Claim

Defendants argue that Plaintiff's trade secret misappropriation claim fails to identify the trade secrets with sufficient particularity and that the alleged protected information overlaps significantly with information disclosed publicly in the Asserted Patents.  Defs.' Br. Mot. Dismiss & Renewed Mot. Transfer at 10–12. Plaintiff responds that the Amended Complaint provided information sufficient to give Defendants notice of the claim, which is all that is required.  Pl.'s Resp. Br. Mot. Dismiss & Renewed Mot. Transfer at 7–9.

Pursuant to the DTSA, the term "trade secret" applies to various categories of information if "the owner thereof has taken reasonable measures to keep such information secret," and "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). At the pleading stage, a plaintiff must identify its trade secrets with enough specificity to place a defendant on notice of the bases of the claim against it. Oakwood Labs. LLC v. Thanoo, 999 F.3d 892, 906 (3d Cir. 2021). A plaintiff is not required to provide enough detail that it risks disclosing its protected information but must use sufficient particularity to separate the information "from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade[.]" Id. (citation omitted). Determining whether a plaintiff has met its pleading burden for a trade misappropriation claim is a fact-specific question to be decided on a case-by-case basis. Id. (citation omitted). Information disclosed publicly through patent disclosures does not constitute protectable trade secrets. Mallet & Co. v. Lacayo, 16 F.4th 364, 383 (3d Cir. 2021) ("A formula disclosed in a patent is, by definition, not a secret.").

Here, the Amended Complaint states that Plaintiff owns and possesses trade secrets "relating to the technology, products, systems, and methods developed by

[Plaintiff] for the creation and commercialization of ballistic barriers."  Am. Compl. ¶ 159.  This information includes "the choice of materials for manufacture, methods of manufacture, design of the product, product samples, testing of the product, and a list of potential customers, that were generated from [Plaintiff's] extensive work in the field of ballistic barriers."  Id. at ¶ 57.  The Amended Complaint states further that this information is "not known or readily ascertainable to third parties" and that Plaintiff has made efforts to maintain its secrecy through "various contractual agreements, including confidentiality protection provisions within contracts like the Technology agreement."  Id. at ¶ 162.  Plaintiff alleges that Ballistic acquired trade secret information through the Technology Agreement and misappropriated it through its manufacture and sales of the Accused Products.  Id. at ¶¶ 162–165.

The Amended Complaint provides several categories of information that Plaintiff considers trade secrets, and specifies the measures taken to protect this information.  At the motion to dismiss stage, viewing all facts in favor of the non-movant, the Court concludes that Plaintiff has sufficiently pled its trade secret misappropriation claim, enough to defeat a motion to dismiss under Iqbal/Twombly and progress to the discovery and fact-finding stage of litigation.

Accordingly, the Court denies Defendants' motion to dismiss Count VIII on the basis that Plaintiff's trade secret misappropriation claim is facially time-barred.

The Court denies Defendants' motion to dismiss Plaintiff's trade secret misappropriation claim for failure to state a claim.

## CONCLUSION

Upon consideration of Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6) & Renewed Motion to Transfer Pursuant 28 U.S.C. § 1404 (D.I. 31), and Defendants' Motion to Sever and Stay Case Against Defendant Mayday Security Solutions (D.I. 37), and all other papers and proceedings in this action, it is hereby

**ORDERED** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6) & Renewed Motion to Transfer Pursuant 28 U.S.C. § 1404 (D.I. 31) is denied; and it is further

**ORDERED** that Defendants' Motion to Sever & Stay Case Against Defendant Mayday Security Solutions (D.I. 37) is denied; and it is further

**ORDERED** that, not later than thirty (30) days from the date of this Order, the Parties shall meet and confer and file a joint proposed Scheduling Order in this action consistent with the applicable form Scheduling Order of Judge Connolly, which is posted at https://www.ded.uscourts.gov/ (See Chambers, Chief Judge Colm F. Connolly), along with a cover letter requesting the Court to enter the joint proposed Scheduling Order (if there are no disputes or other issues concerning

scheduling that the Court needs to address) or to schedule the Scheduling

Conference.  If the Parties are unable to agree upon a proposed scheduling order,

each Party shall file a proposed scheduling order by the deadline and contact my

Case Manager, Steve Taronji, by telephone at (212) 264-1611 or via e-mail at

steve_taronji@cit.uscourts.gov, to arrange a conference with the Court.


IT IS SO ORDERED this 9th day of October, 2025.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

---

* Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.