**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **DISRUPTIVE RESOURCES, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BALLISTIC BARRIER PRODUCTS INC. AND MAYDAY SECURITY SOLUTIONS LLC,**<br><br>**Defendants.** | **Court No. 1:24-cv-00321-JCG** |

# OPINION AND ORDER

[Providing claim construction for the patents in suit.]

Dated: October 15, 2026

Sean T. O'Kelly, O'Kelly & O'Rourke, LLC, of Wilmington, DE. Michael B. Marion, Bycer & Marion, PLC, of Phoenix, AZ. Attorneys for Plaintiff Disruptive Resources, LLC.

Francis DiGiovanni and Thatcher A. Rahmeier, Faegre Drinker Biddle & Reath LLP, of Wilmington, DE. Mark P. Walters, Miles Yanick, and Stephen A. Merrill, Lowe Graham Jones PLLC, of Seattle, WA. Attorneys for Defendants Ballistic Barrier Products Inc. and Mayday Security Solutions LLC.

Choe-Groves, Judge: This matter is before the Court for claim construction of terms in U.S. Patent Nos. 10,473,437 (the "'437 Patent"), 11,561,070 (the "'070 Patent"), 11,566,872 (the "'872 Patent"), 11,828,574 (the "'574 Patent"), 11,828,575 (the "'575 Patent"), 11,879,707 (the "'707 Patent"), and 11,920,905

(the "'905 Patent") (collectively, the "Asserted Patents"). Revised Joint Claim Construction Chart ("Rev. Joint Chart") (D.I. 87); Joint Claim Construction Br. ("Joint Br.") (D.I. 105). The Parties seek construction of the following terms and phrases: "blind"/"blinds;" "anti-ballistic," "ballistic resistant; "decorative;" "feeding a continuous length;" "laminate," "laminated sheet;" "laminated together;" "flat;" "flexible;" "flex and move," "flex and/or move," "move and/or flex;" and "dropping"/"drop." Rev. Joint Chart. Upon consideration of the briefs and arguments of counsel, the Court construes the disputed claim terms as set forth below.

**BACKGROUND**

Disruptive Resources, LLC ("Plaintiff" or "Disruptive") filed suit against Ballistic Barrier Products Inc. and Mayday Security Solutions LLC ("Defendants") for infringement of the Asserted Patents. Pl. Disruptive Resources, LLC's First Am. Compl. ("Am. Compl.") (D.I. 29). Defendants make and sell ballistic protective blinds and barriers that Plaintiff claims infringe the Asserted Patents. Id. at ¶¶ 9–23, 52. This Opinion concerns the first step of the two-step infringement analysis, the construction of claim terms asserted in the Asserted Patents. The '070, '872, '574, '575, and '707 Patents share a common specification. Joint Claim Construction Appendix, Ex. 1 ("'437 Patent") (D.I. 106-1), Ex. 2 ("'070 Patent") (D.I. 106-2), Ex. 3 ("'872 Patent") (D.I. 106-3), Ex. 4

("'574 Patent") (D.I. 106-4), Ex. 5 ("'575 Patent") (D.I. 106-5), Ex. 6 ("'707 Patent") (D.I. 106-6), Ex. 7 ("'905 Patent") (D.I. 106-7).[1] The '437 Patent was issued by the United States Patent and Trademark Office ("USPTO") on November 12, 2019, the '070 Patent was issued by the USPTO on January 24, 2023, the '872 Patent was issued by the USPTO on January 31, 2023, the '574 and '575 Patents were issued by the USPTO on November 28, 2023, the '707 Patent was issued by the USPTO on January 23, 2024, and the '905 Patent was issued by the USPTO on March 5, 2024. '437 Patent at [45]; '070 Patent at [45]; '872 Patent at [45]; '574 Patent at [45]; '575 Patent at [45]; '707 Patent at [45]; '905 Patent at [45]. The Parties filed a joint claim construction brief and claim chart. See Joint Br.; Rev. Joint Chart; Am. Joint Claim Construction Br. ("Am. Joint Br.") (D.I. 110, 111); Am. Joint Claim Construction Chart ("Am. Joint Chart") (D.I. 109). The Court held a claim construction hearing on August 7, 2026, and the Parties did not call expert witnesses. See Third Am. Sched. Order (D.I. 99).

## CLAIM CONSTRUCTION STANDARD

When the meaning of a patent claim's language is disputed, the Court must construe the claim as a matter of law. Markman v. Westview Instruments, Inc., 52

---

[1] The '872, '574, '575, and '707 Patents are all continuations of the '070 Patent. See '070 Patent at [21]; '872 Patent at [63]; '574 Patent at [63]; '575 Patent at [63]; '707 Patent at [63].

F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). "[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." Markman, 517 U.S. at 372. "The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting Markman, 52 F.3d at 976).

"The patent is a fully integrated written instrument." Markman, 52 F.3d at 978. For the purpose of claim construction, "[a] court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing Markman, 52 F.3d at 979). "The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." Thorner v. Sony Comput. Ent. Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)).

Limitations from dependent claims, the specification, and embodiments will not be read into the claims. "The doctrine of claim differentiation [ ] creates a presumption that [ ] dependent claim limitations are not included in the independent claim." GE Lighting Sols., LLC v. AgiLight, Inc., 750 F.3d 1304,

1310 (Fed. Cir. 2014) (citation omitted). Limitations found in the specification are not imposed into the claims. Phillips, 415 F.3d at 1323–24. In the same vein, "[i]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." GE Lighting Sols., LLC, 750 F.3d at 1309 (citation omitted) (discussing a figure as a "depicted embodiment").

## DISCUSSION

### I. Undisputed Term

The Court observes that the Parties agree that "ballistic" shall mean "relating to projectiles." Am. Joint Br. at 9. The Court accepts this construction of the term "ballistic."

### II. Disputed Terms

The Parties disagree on ten claim terms or term sets in the Asserted Patents. The Court examines each disputed term and the Parties' arguments in turn.

#### a. "blind"/"blinds"

Plaintiff asserts that the term "blind"/"blinds" should be construed as "covering assembly that is configurable between open and close states." Id. at 10. Defendants propose construing the term as "a window covering structure formed from a plurality of slat like elements arranged to selectively open and close." Id. Claim 1 of the '437 Patent recites:

> [a] blind system comprising:
>
> a suspended blind configured to hang in an interior window frame of a structure, said blind being attached at a top of the window frame and comprising a plurality of rotatable horizontally arranged slats having a lightweight, non-metallic anti-ballistic material configured to have a uniform thickness, said blind being configured to have a retracted state with the slats collapsed toward the top of the window frame allowing light to be transmitted through the window frame, said blind being further configured, when not in said retracted state, to rotate said slats to transmit light in an open state, said blind also being configured to have a protective state with the blind not in the retracted state and with the slats rotated to block light with the blind deploying in the window frame to activate anti-ballistic properties to stop projectiles from entering an interior of the structure;
>
> a control system operably configured to cause a change in state of the blind from the retracted or open state to the protective state; and
>
> a sensing system operably configured to automatically detect a threatening event occurring outside of said structure, wherein the sensing system, upon sensing the threatening event, automatically triggers the control system transition to the protective state.

’437 Patent at 6:14–39. After re-examination, Claim 28 was added to the ’437 Patent and recites:

> [a] blind system comprising:
>
> a mounting structure provided near a top of a window frame;
>
> a blind configured to hang in a window frame at a top end portion from the mounting structure by suspension and comprising a fabric comprised of a light-weight antiballistic material,
>
> said blind being configured to have a retracted state allowing light to be transmitted through the window frame, and a protective state with the blind dropping into the window frame for protecting an interior of said structure from penetration by a projectile through the window;

> a rail provided at a bottom end portion of the blind configured to maintain a position of the blind; and
>
> an actuator configured to cause a change in state of the blind from the retracted state to the protective state.

’437 Patent, Ex Parte Reexamination Certificate at 1:26–42. Plaintiff argues that slat-based, venetian blinds are only one exemplary embodiment, and that Defendants’ construction would read out embodiments in the specification, such as Figures 5 and 6, that depict other blind styles. Am. Joint Br. at 10–11, 18. Defendants identify that the specification consistently uses the disputed term to refer to blinds with slats. Id. at 12. The specification summarizes the claimed invention and describes the blinds as providing an “anti-entry function,” such as a “bullet proof system characterized by light weight, high ballistic resistant vanes, louvers or slats for application in a simple, yet unconventional manner.” ’437 Patent at 1:61–64.

Defendants claim that Plaintiff disclaimed construing the term as blinds without slats in the prosecution history of the ’437 Patent. Am. Joint Br. at 12–17. The prosecution history can also inform the meaning of the claim language when it demonstrates how the inventor understood the invention and whether the inventor narrowed the scope of the claims during prosecution. Phillips, 415 F.3d at 1317. When a patentee has unequivocally disavowed a certain meaning to obtain a patent, “the doctrine of prosecution disclaimer attaches and narrows the ordinary

meaning of the claim congruent with the scope of the surrender." Omega Eng'g, Inc, v. Raytek Corp., 334 F.3d 1314, 1324 (Fed. Cir. 2003). The alleged disavowing actions or statements made during prosecution must be both clear and unmistakable. Id. at 1325–26.

Statements made by a patent owner during a reexamination proceeding can be considered for claim construction and relied upon to support a finding of prosecution disclaimer. See Aylus Networks, Inc. v. Apple Inc., 856 F.3d 1353, 1361 (Fed. Cir. 2017). The Court will not use an ambiguous disclaimer to limit a claim term's ordinary meaning. 01 Communique Lab'y, Inc. v. LogMeIn, Inc. ("01 Communique") 687 F.3d 1292, 1297 (Fed. Cir. 2012) (quoting SanDisk Corp. v. Memorex Prods., Inc., 415 F.3d 1278, 1287 (Fed. Cir. 2005)). "There is no 'clear and unmistakable' disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term." Id.

Defendants reference statements made by Plaintiff when distinguishing the claimed invention from prior art De Gaglia. Am. Joint Br. at 13; Joint Appendix, Ex. 8, '437 Patent File History, Resp. to Office Action dated October 2, 2017 ("Ex. 8") (D.I. 106-8). In differentiating the claimed invention from De Gaglia, the applicant noted that De Gaglia concerns a barrier that rises from underneath the floor to protect an individual speaking in public. Ex. 8 at 10. One statement that

Defendants reference states:

> [the De Gaglia] barrier provides no ability to regulate light flow, a necessary feature in any window blind. In contrast, window blinds such as the invention are primarily designed to control light flow by hanging in an interior window of a structure, a function of which De Gaglia is incapable of providing. The blinds control light by dropping into the window and/or by rotating slats.

Id. Defendants also refer to the following statement: "Furthermore, De Gaglia does not utilize slats that are horizontally arranged or rotatable. In contrast to the invention, the De Gaglia control function merely raises a collapsible barrier, with no ability to control slats." Am. Joint Br. at 13; Joint Appendix, Ex. 9, '437 Patent File History, Resp. to Office Action dated April 16, 2018 at 10–11 (D.I. 106-9).

Plaintiff's prosecution arguments cannot be "subject to more than one reasonable interpretation" in order for there to be a clear disclaimer. See 01 Communique, 687 F.3d at 1297. The context in which Plaintiff discussed the invention's slat features is significant because Plaintiff was explaining the distinction between the substantially different functionality of the claimed invention and De Gaglia. The applicant stated that "[t]he blinds control light by dropping into the window and/or by rotating slats," which is not a declaration that the blinds must exclusively feature slats. Ex. 8 at 10. The Court concludes that the statements Defendants refer to do not demonstrate a clear and unmistakable disclaimer that would prohibit Plaintiff from proposing the construction of "covering assembly that is configurable between open and close states." See 01

Communique, 687 F.3d at 1297.

Plaintiff's construction accounts for the variety in the types of blinds that are claimed throughout the '437 Patent. The specification describes a roll-up blind system and a fabric blind system, both of which do not incorporate slats. '437 Patent at 5:35–43. A definition of the claim term should account for the variety of the blinds either having or not having slats. Accordingly, based on the claim language and specification, the Court construes the disputed term as "covering assembly that is configurable between open and closed states, with or without slats."

**b. "anti-ballistic;" "ballistic resistant"**

Defendants assert that the term "anti-ballistic" or "ballistic resistant" is indefinite pursuant to 35 U.S.C. § 112(b), and Plaintiff asserts that the term is not indefinite. Am. Joint Br. at 24. Plaintiff proposes defining the term as "configured to provide ballistic resistance." Id.

A patent is presumed valid under 35 U.S.C. § 282, and a defense of invalidity must be proven by clear and convincing evidence. Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 95 (2011). A patent is invalid for indefiniteness if "its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. 898,

901 (2014). "[A] context-specific inquiry into whether particular functional language actually provides the required reasonable certainty" is needed to determine indefiniteness. BASF Corp. v. Johnson Matthey Inc., 875 F.3d 1360, 1366 (Fed. Cir. 2017).

The disputed term is found throughout the Asserted Patents. Am. Joint Chart at 2–6. Claims 11 and 24 in the '437 Patent recite "non-metallic light-weight material with anti-ballistic properties," and "light-weight anti-ballistic material." '437 Patent at 7:7–8, 8:32–33. Defendants argue that the patent fails to give a person of ordinary skill in the art the necessary criteria to decipher what qualifies as "anti-ballistic" or "ballistic resistant." Am. Joint Br. at 28. Defendants argue that the Asserted Patents use the term in a descriptive sense and that, as a term of degree, the patent must provide an objective standard for measuring the term's scope. Id. at 28–30. Defendants state that while the claim language enumerates well-known bullet-resistant substances, the patent nowhere requires a specific performance standard, testing protocol, or quantitative resistance threshold. Am. Joint Br. at 30–31; see '437 Patent at 6:65–67 (Claim 9 of the '437 Patent describes ballistic resistant material that includes "Kevlar, Lexan, tensylon, and/or a boron treated material."). Defendants claim that for a person of ordinary skill in the art, absent any metric or threshold for the term "anti-ballistic" or "ballistic resistant," the plain meaning remains subjective. Am. Joint Br. at 32.

Language of degree "is indefinite unless, 'when read in light of the specification and the prosecution history, [it] provide[s] objective boundaries for those of skill in the art.'" Akamai Techs., Inc. v. MediaPointe, Inc., 159 F.4th 1370, 1378 (Fed. Cir. 2025) (internal citations omitted) (alterations in original). Claim language that includes terms of degree "has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." Interval Licensing LLC v. AOL, Inc., 766 F.3d 1364, 1370 (Fed. Cir. 2014). While the definiteness requirement requires clarity, "absolute precision is unattainable." Nautilus, Inc., 572 U.S. at 910.

The '437 Patent, titled "Bullet Proof Blinds,"[2] claims an invention that provides protection through the use of blinds that have a control system for opening and closing and a sensing system to detect a threatening event. '437 Patent at [54], [57]. Upon sensing a threatening event, the control system is triggered to transition the blinds from an open state to a protective state, where "the blinds are adapted to be resistant to penetration by high-speed ballistic objects." Id. at [57]. In terms of the scope of the disputed term, the understanding of the patent instructs that something is either anti-ballistic, or it is not. The specification

[2] The '070, '574, '575, '707, and '872 Patents are all titled "Bullet Proof Barriers," and the '905 Patent is titled "Anti-Ballistic Laminate Manufacturing Method and Products." '070 Patent at [54]; '574 Patent at [54]; '575 Patent at [54]; '707 Patent at [54], '872 Patent at [54]; and '905 Patent at [54].

states that blinds that are "resistant to penetration by high-speed ballistic objects" provide the requisite protection for the claimed invention. Id. This aids in determining the objective boundary for the disputed term. This provides guidance as to what the patent considers as sufficient to provide the type of protection for the claimed invention, and this aligns with the plain and ordinary meaning of the term "anti-ballistic" or "ballistic resistant."

While dependent Claim 9 of the '437 Patent expounds on the types of material that may comprise a "ballistic resistant material," this does not detract from the patent's understanding of what is anti-ballistic or not. Id. at 6:65–67. The Court notes that the Parties agreed upon a definition of "relating to projectiles" for the term "ballistic." Am. Joint Br. at 9. This demonstrates a recognition of the intent behind the patent and the context in which the patent describes the invention of bullet proof blinds. '437 Patent at [54]. The Court holds that a person of ordinary skill in the art would understand, from reading the claim language and specification, the meaning of "anti-ballistic" or "ballistic resistant." The Court concludes that the disputed term shall have its plain and ordinary meaning, which is "configured to prevent or resist projectiles."

**c. "decorative"**

For the term "decorative," Plaintiff argues that no construction is necessary, and in the alternative suggests "aesthetically appearing," while Defendants argue

that the term is indefinite. Am. Joint Br. at 44. The method Claim 26 of the ’905 Patent recites:

> [a] method of producing a continuous length of flexible ballistic resistant laminate comprising the steps of:
>
> feeding a continuous length of a first sheet of material including a ballistic resistant material woven into a cloth into a bonding process;
>
> feeding a continuous length of a second sheet including said ballistic resistant material or another ballistic resistant material into the bonding process;
>
> feeding a continuous length of an outer layer that does not provide anti-ballistic properties into the bonding process; and
>
> using said bonding process utilizing stitching in a regular pattern of transverse stitches spaced equally apart along a longitudinal length of said sheet of flexible ballistic resistant laminate to bond said first sheet of material, said second sheet of material, said third sheet of material together to form said continuous length of flexible ballistic resistant laminate, wherein
>
> the outer *decorative* layer is provided on an outer surface of the continuous length of flexible ballistic resistant laminate, and wherein
>
> said flexible ballistic resistant laminate is configured to prevent a ballistic object including a bullet fired from a gun from penetrating the flexible ballistic resistant laminate.

’905 Patent at 15:1–25 (emphasis added). Plaintiff asserts that figures across the ’070, ’872, and ’905 Patents show “decorative” layers as outer surface layers, “distinct from the inner anti-ballistic layers they enclose.” Am. Joint Br. at 44–45.

The specification of the ’070 Patent states that “decorative blinds are

provided separate from blinds that provide ballistic protection, with the ballistic blinds being provided in an undeployed state, being deployed when a threatening situation is detected." '070 Patent at 2:25–28. The deployable blinds are further described as being comprised of "an anti-ballistic laminate including a plurality of layers of flexible anti-ballistic material and at least one outer decorative layer with all said layers being secured together into a flexible sheet or slat[.]" Id. at 3:34–41. The '872 Patent describes exemplary Figure 7, which shows a side view of a laminated slat, as "having ballistic layer 420 sandwiched between decorative layers 410 and 430." '872 Patent at 18:21–23. For example, "layers 410 [and] 430 could be a single layer of fabric surrounding a ballistic panel as layer 420," or "ballistic layer 420 might comprise a ballistic fabric, making the entire slat of layers of fabric and/or sheets of material." Id. at 18:23–29.

Defendants argue that the intrinsic record shows that "decorative" is used in an esthetic sense that is too subjective to provide reasonable certainty. Am. Joint Br. at 47–48. A patent does not satisfy the definiteness requirement of 35 U.S.C. § 112 simply because "a court can ascribe some meaning to a patent's claims." Interval Licensing LLC, 766 F.3d at 1371 (emphasis omitted). "The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art." Id. Defendants suggest that

Plaintiff's argument that "the term decorative is defined by location and function rather than being subjective," is inconsistent with the patents' indications that not all outer layers are decorative. Am. Joint Br. at 50–51 (quoting '070 Patent at 5:63–64 ("[O]ptional outer layers 410 and 430 provid[e] protection and/or decorative layers."); '905 Patent at 8:54–56 ("[T]he outer layers might be made decorative" for "esthetics of the end product.")). Defendants also contend that Plaintiff's alternative construction of "aesthetically appearing" also contradicts the argument that "decorative" denotes both location and function. Am. Joint Br. at 50.

The '707 Patent describes the valance of an anti-ballistic window blind and states that the valance "may be decorative in nature to be pleasing aesthetically, or covered in a decorative cloth or covering." '707 Patent at 15: 25–27. The specification of the '905 Patent provides more of a description of what the patent considers decorative:

> [f]urthermore, the outer layers might be made decorative or paintable, or in some other manner that leads to flexibility in the esthetics of the end product. In some cases, the final, outer layers may be solely for decorative purposes, with no anti-ballistic properties. For example, FIG. 3 shows an example laminate having inner layer(s) [] of anti-ballistic material bonded together, with outer layers [] bonded to [] the inner bonded layers which may be decorative for aesthetic reasons.

'905 Patent at 8:54–62. The visual esthetic aspect of a decorative layer calls for a subjective opinion as to what can be considered decorative.

Specifically, the '707 Patent informs that the patent understands the term "decorative" to be "pleasing aesthetically." See '707 Patent at 15: 25–27; see also Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1356 (Fed. Cir. 2005), abrogated by Nautilus, Inc., 572 U.S. at 907–08 (affirming a finding that the claim term "aesthetically pleasing" was indefinite); Vaxcel Int'l Co. v. HeathCo LLC, No. 20-224-LPS, 2021 WL 7209508, at *9 (D. Del. Nov. 22, 2021) (concluding that a claim term was indefinite because "aesthetic" is subjective).

A patent is invalid for indefiniteness if the claims, read in light of the specification and prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention. Nautilus, Inc., 572 U.S. at 901. The patent claims use the term "decorative" to indicate visual esthetics, which are highly dependent upon personal opinion. The subjective element of the term "decorative" prevents the claim language from providing reasonable certainty of what meets the patents' understanding of the term. The Court concludes that the term "decorative" is indefinite under 35 U.S.C. § 112(b).

**d. "feeding a continuous length"**

For the disputed term, "feeding a continuous length," Plaintiff proposes construing the term as "supplying an elongated length," whereas Defendants

propose the construction "supplying an unbroken, elongated length of material into the process (for example, from a roll), as opposed to supplying discrete or pre-cut sections." Am. Joint Br. at 52. The phrase is used in Claims 1, 22, 26, 28, and 30 of the '905 Patent. Am. Joint Chart at 8–9. Plaintiff argues that the claim language depicts a manufacturing process of "feeding" laminate that can be completed without the use of a roll. Am. Joint Br. at 53–54. Defendants assert that the invention is directed towards continuous production of an uninterrupted, input-to-output manufacturing flow that is not a "series of discrete operations on individual pieces." Id. at 54.

Defendants state that their construction does not require that the material be supplied in the form of a roll, but only requires that an "unbroken, elongated length" be supplied into the process as opposed to "discrete, pre-cut sections." Id. at 57 n.5. Construing the term as "supplying an unbroken, elongated length into the process" aligns with the claim language and specification. The claims' frequent use of the word "continuous" in relation to how the patents' figures demonstrate the manufacturing processes provides one of ordinary skill in the art sufficient information to understand that an unbroken, elongated material is being fed into the various processes.

Accordingly, the term "feeding a continuous length," shall be construed as "supplying an unbroken, elongated length into the process."

**e. "laminate;" "laminated sheet"**

For the term "laminate" or "laminated sheet," Plaintiff proposes the construction "multiple layers arranged in a stack" or "sheet comprising multiple layers arranged in a stack." Id. at 58. Defendants propose construing the term as "multiple layers joined or bonded together so that they function as a single material or layer." Id. Claim 1 of the '070 Patent recites in part:

> [a] window blind system for protecting an interior space from ballistic objects using a deployable barrier, comprising:
>
> a mounting structure configured for storing the deployable barrier in a retracted position in or at an interior window frame of a window;
>
> the deployable barrier comprising a plurality of layers of flexible contiguous sheets of woven anti-ballistic material stacked on top of each other secured together into a flexible laminated sheet [. . .]

'070 Patent at 20:14–22. Dependent Claim 14 of the '070 Patent recites: "[t]he system according to claim 1, wherein said flexible anti-ballistic material comprises a laminate including more than two layers of flexible anti-ballistic material." Id. at 21:13–15. In the specification, the "anti-ballistic laminate" that comprises the invention's "deployable blind," includes a plurality of layers and "all said layers [are] secured together into a flexible sheet or slat[.]" Id. at 3:34–38. This instructs that the "laminate" is comprised of layers that are secured together to form "a flexible sheet or slat." See id.

This fusion of layers is further supported by the specification in the '905 Patent that explains how a laminate may also be bonded through stitching. '905

Patent at 7:5–9. Figure 6 depicts a laminate in a vertical view, whereas Figures 5 and 7 show a laminate from a horizontal or side view. See id. at Sheet 2. The specification explains that Figure 6 shows a laminate that is bonded using stitching but, alternatively, "double or triple layer matted, unwoven sheets might form one laminate all glued, pressed, sewed, or spot welded together . . ." Id. at 7:5–9, 38–40. "Sixteen layers is a desirable laminate amount for some purposes." Id. at 7:43–44.

Plaintiff argues that a portion of Defendants' proposed construction, "function as a single material," contradicts the specification's bonding disclosures. Am. Joint Br. at 66. The specification explains that "[t]he laminated layers are desired to be formed into a cohesive structure by bonding them together in a manner that does not easily separate back into individual sheets." '905 Patent at 5:19–21. This indicates that the claim language of "laminate" or "laminated sheet" consists of multiple layers that are combined. However, the claim language does not support a reading that requires the "laminate" or "laminated sheet" to function only as a single layer. The Court concludes that the claim language, read in conjunction with the specification, supports a construction that accounts for the fusion of multiple layers to create a combined material. Accordingly, the term "laminate" and "laminated sheet" shall be construed as "multiple layers, arranged in a stack, joined or bonded together."

**f. "laminated together"**

The Parties dispute the term "laminated together." Am. Joint Br. at 70. Plaintiff proposes construing the term as "multiple layers stacked and secured together," and Defendants propose the same construction that Defendants proposed previously for the term "laminate" or "laminated sheet." Id. Plaintiff asserts that using the same construction for "laminated together" as "laminate" or "laminated sheet" is improper given that "laminated together" is a verb phrase that describes "the act of assembling multiple discrete sheets into a laminate." Id. Claim 1 of the '872 Patent recites in part:

> [a] method of protecting an interior space of a building from a ballistic projectile using a flexible ballistic barrier, said method comprising the steps of:
>
> providing the ballistic barrier comprised of a plurality of sheets of lightweight anti-ballistic woven material laminated together into a flexible laminate [. . .]

'872 Patent at 20:20–25. The term "laminated together" reflects the act of making the "laminate" or "laminated sheet." In accordance with the Court's construction for the term "laminate" or "laminated sheet," the Court concludes that "laminated together" shall be construed as "the act of multiple layers, arranged in a stack, being joined or bonded together."

**g. "flat'**

For the disputed term "flat," Plaintiff argues that no construction is

necessary, but provides a definition in the alternative of "essentially planar." Am. Joint Br. at 73. Defendants argue that the term is indefinite, but provide a proposed construction in the alternative of "planar arrangement or configuration without any curvature." Id. The '872, '574, and '707 Patents use the term "flat" in the following contexts: "flat, flexible laminate," "material laminated together into a flat configuration," or "welding said sheets together to form a substantially flat laminate," respectively. '872 Patent at 21:40; '574 Patent at 20:25–26; '707 Patent at 21:34–35. The specification of the '872 Patent acknowledges that "slats [] can be made flat or curved[.]" '872 Patent at 9:38. This supports the plain and ordinary meaning of the term "flat," which is something that has a level surface. The Court concludes that the specification provides guidance for understanding the claim term such that the term is not indefinite. Accordingly, the Court concludes that "flat" shall have its plain and ordinary meaning of "having a level surface."

**h. "flexible"**

Defendants assert that the term "flexible" is indefinite, whereas Plaintiff argues that no construction is required. Am. Joint Br. at 79. In the alternative, Plaintiff proposes the definition of "capable of being flexed." Id.

The window blind system recites a barrier "comprising a plurality of layers of flexible contiguous sheets of woven anti-ballistic material." '070 Patent at 20:14–21. The layers are "stacked on top of each other" and "secured together into

a flexible laminated sheet." Id. at 20:19–22. The specification discusses the flexibility of blinds that are constructed out of lighter and cheaper material as blinds that "could prove flexible and more deployable and retractable." Id. at 17:58–62. In describing hanging blinds with layers secured together through stitching, the specification notes that "the very looseness, flexibility, and motion of the material aids in energy absorption, providing better ballistic protection and penetration avoidance." Id. at 7:53–58.

A person of ordinary skill in the art, viewing the claim language in conjunction with the specification, would understand the plain meaning of the term "flexible." "Flexible" is used in the claim language and specifications in a way to denote the movability of an object. The patent's use of the term is understood from the specification's discussion of the motion and flexibility of materials aiding in energy absorption for ballistic protection. See id. The Court concludes that the term is not indefinite. Accordingly, the term "flexible" shall have its plain and ordinary meaning of "having the ability to bend and move."

**i. "flex and move;" "flex and/or move;" "move and/or flex"**

Defendants assert that the disputed term "flex and move," "flex and/or move," or "move and/or flex" is indefinite. Am. Joint Br. at 87. Plaintiff argues that no construction is required or that the term flex should be defined as "deforming" and move should be defined as "position change" in the alternative.

Id.

In describing the window blind system, the claim language recites in part:

> a deployment mechanism configured to drop the deployable barrier into a deployed position such that the barrier protects the space from entry by a ballistic object through the window, said barrier being configured to flex and move in response to impact from the ballistic object to absorb energy from the ballistic object to further protect said space from the ballistic object [. . .]

’070 Patent at 20:23–30. For the blinds that hang, the specification describes the barrier layer as a “flexible layer that can move, vibrate, swing, and otherwise convert the kinetic energy of the ballistic projectile into kinetic and/or heat energy in the barrier [] by nature of having barrier sides [] and a barrier bottom [] that are not secured to any structure in this free hanging embodiment.” Id. at 8:4–10.

Plaintiff argues that the term “flex and move” describes the inherent physical behavior of the woven fabric laminates in the mounting configuration. Am. Joint Br. at 88. Defendants argue that the claims provide no guidance as to how much flexing or moving is required, or what type of movement is necessary. Id. at 91. Defendants state that beyond the hanging embodiment, the specification invites uncertainty by stating that the barrier may still “flex and move” when the barrier’s sides and bottom are secured. Id. at 91–92. The specification states that barriers are “still free to flex and move” in embodiments that have a fixed perimeter. ’070 Patent at

5:38–44. Further, the specification states that these barriers are "still free to flex and move in response to receiving a ballistic projectile in at least [a] portion of their surface area," "thereby converting at least a portion of the kinetic energy of the projectile into kinetic and heat energy in the barrier distributed across the entire surface area of the barrier." Id. at 5:43–49. This provides a person of ordinary skill in the art context as to how the patent uses flexing and moving in relation to the barrier responding to or absorbing kinetic energy from a projectile.

Definiteness does not turn on providing absolute or mathematical precision. See Interval Licensing LLC, 766 F.3d at 1370. The specification explains how the claim language of "flex and move" relates to the material's ability to respond to projectiles, which must be considered in the context of the invention. Accordingly, the Court concludes that the term is not indefinite, and "flex and move," "flex and/or move," or "move and/or flex," shall have its plain and ordinary meaning of "changing shape or form."

**j. "dropping"/"drop"**

Defendants assert that the term "dropping" or "drop" is indefinite or should be construed as "falling downward under the force of gravity." Am. Joint Br. at 96. Plaintiff proposes defining the term as "deploy or deploying from a retracted position into a deployed position." Id. Defendants argue that the meaning of the

term is ambiguous because the claim language provides no clarity as to how the barrier specifically drops. Id. at 98–99. Defendants suggest that there is uncertainty over how the barrier is claimed to drop because it could drop by either a gravity-driven motion, powered movement, or both. Id. at 99–100.

Claim 24 of the '437 Patent recites a blind system comprising of "the blind dropping into the window frame for protecting an interior of said structure from penetration by a projectile[.]" '437 Patent at 8:27–38. The deployment mechanism of the claimed invention is described as "configured to drop the blind into a deployed position such that the blind hangs from the mounting structure in a movable manner[.]" '872 Patent at 3:41–46, 55–61. In the context of the invention, and considering the detail provided in the specification, a person of ordinary skill in the art would understand the meaning of "dropping" or "drop" as used throughout the patents. The Court concludes that the term is not indefinite. Accordingly, the term "dropping" or "drop" shall have its plain and ordinary meaning of "moving downward."

## CONCLUSION

For the foregoing reasons, the Court resolves the disputed claim terms in the Asserted Patents as follows:

1. "blind"/"blinds" shall mean "covering assembly that is configurable between open and closed states, with or without slats;"

2. "anti-ballistic" and "ballistic resistant" shall have the plain and ordinary meaning of "configured to prevent or resist projectiles;"
3. "decorative" is indefinite under 35 U.S.C. § 112(b);
4. "feeding a continuous length," shall mean "supplying an unbroken, elongated length into the process;"
5. "laminate" and "laminated sheet" shall mean "multiple layers, arranged in a stack, joined or bonded together;"
6. "laminated together" shall mean "the act of multiple layers, arranged in a stack, being joined or bonded together;"
7. "flat" shall have its plain and ordinary meaning of "having a level surface;"
8. "flexible" shall have its plain and ordinary meaning of "having the ability to bend and move;"
9. "flex and move," "flex and/or move," and "move and/or flex," shall have the plain and ordinary meaning of "changing shape or form;" and
10. "dropping" and "drop" shall have the plain and ordinary meaning of "moving downward."

IT IS SO ORDERED this 15th day of October, 2026.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

*Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.